_____

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 19, 2020**

The Order of the Court is set forth below. The docket reflects the date entered.
_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**XAVIER SPROULLS AND**                                          **CASE NO. 15-00043-NPO**
**JOSEPHINE B. SPROULLS,**

     **DEBTORS.**                                                                        **CHAPTER 13**

## ORDER GRANTING MOTION FOR
## MODIFICATION OF PLAN TO INCREASE PLAN PAYMENTS

This matter came before the Court for hearing on January 13, 2020 (the "Hearing"), on the Motion for Modification of Plan to Increase Plan Payments (the "Motion to Modify") (Dkt. 118) filed by the debtors, Xavier Sproulls ("Mr. Sproulls") and Josephine B. Sproulls ("Mrs. Sproulls" or, together with Mr. Sproulls, the "Debtors") in the above-referenced bankruptcy case (the "Bankruptcy Case"), and the Trustee's Response to Debtors' Motion to Modify (the "Response") (Dkt. 123) filed by Harold J. Barkley, Jr. the standing chapter 13 trustee (the "Trustee"). At the Hearing, Justin Jones represented the Trustee and Frank H. Coxwell represented the Debtors. The Court instructed the parties to file briefs on two (2) legal issues: (1) when does the sixty (60)-month plan term commence for modification purposes? and (2) does the Court have discretion to allow additional time to make curative payments after the sixty (60)-month term of the plan ends? Both

parties timely filed briefs with the Court. The Debtors filed the Memorandum Addressing Whether or Not a Chapter 13 Plan can Continue for a Period Longer than Sixty Months (Dkt. 131) on January 27, 2020, and the Trustee filed the Trustee's Memorandum Brief (Dkt. 132) on January 31, 2020. After fully considering the matter, the Court finds as follows:[1]

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of the Bankruptcy Case pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Notice of the Hearing was proper under the circumstances.

## Facts

1. The Debtors filed a Voluntary Petition (the "Petition") (Dkt. 1) under chapter 13 of the Bankruptcy Code on January 7, 2015. That same day, the Debtors filed a Chapter 13 Plan (Dkt. 9) proposing a plan period of sixty (60) months.

2. On January 13, 2015, the Court[2] entered the Order Upon Employer Directing Deductions from Pay (Dkt. 15) requiring Mr. Sproulls' employer to deduct $69.50 weekly from his paycheck and to remit this sum to the Trustee. On April 15, 2015, the Debtors filed a Motion to Amend Chapter 13 Plan (Dkt. 45) based on a proof of claim filed by a creditor. On that same day, the Debtor filed a Modified Chapter 13 Plan (the "Plan") (Dkt. 47). The Court entered an Amended Order Upon Employer Directing Deductions from Pay (Dkt. 54) increasing the deductions from Mr. Sproulls' paycheck to $113.00 weekly on May 8, 2015.

---

[1] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] The Bankruptcy Case was assigned originally to U.S. Bankruptcy Judge Edward Ellington and was reassigned to the above-signed judge on December 1, 2018.

3.      On May 11, 2015, the Court entered the Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders (Dkt. 56). The Trustee filed a Notice and Motion to Dismiss (Dkt. 57) for non-payment on May 13, 2015. After a hearing on the matter, the Court signed an Agreed Order (the "Agreed Order") (Dkt. 61) denying the Trustee's Notice and Motion to Dismiss (Dkt. 57) and implementing a sixty (60)-day strict compliance requirement. (Dkt. 61).  Following that Agreed Order, the Court entered another Amended Order Upon Employer Directing Deductions from Pay (Dkt. 63) increasing the deductions from Mr. Sproulls' paycheck to $120.00 weekly.

4.      On November 12, 2015, the Court entered the Final Order of Dismissal (Dkt. 69) after the Debtors became more than sixty (60) days delinquent in their Plan payments. Given the dismissal of the Bankruptcy Case, the Court entered an order vacating the previous wage order. (Dkt. 72). The Debtors filed the Motion to Reinstate Chapter 13 Case and Resume Plan (Dkt. 73) on November 19, 2015. Apparently, Mr. Sproulls' employer had been withholding the money from Mr. Sproulls' paycheck but had not been remitting the funds to the Trustee in a timely manner. (Dkt. 73). On December 7, 2015, the Court entered the Order Reinstating Chapter 13 Case (Dkt. 79). The Court entered an Order Upon Employer Directing Deductions from Pay (Dkt. 80) again requiring Mr. Sproulls' employer to deduct $120.00 weekly from his paycheck.

5.      Approximately one year later on November 15, 2016, the Court entered a Final Order of Dismissal (Dkt. 83) for non-payment. On December 2, 2016, the Debtors filed a Motion to Reinstate Chapter 13 Case and Resume Plan (Dkt. 88). Again, Mr. Sproulls' employer had been withholding money but had not been remitting the funds to the Trustee in a timely manner. The Court issued an Order Reinstating Chapter 13 Case (Dkt. 93) on December 16, 2016. The Debtors asked that the Plan payments be withheld from the wages earned by Mrs. Sproulls and no longer

from Mr. Sproulls' wages. (Dkt. 95). Accordingly, the Court issued an Order Upon Employer Directing Deductions from Pay (Dkt. 96) requiring Mrs. Sproulls' employer to withhold $520.00 monthly from her paycheck. The Court also entered an order vacating the wage order requiring Mr. Sproulls' employer to withhold $120.00 weekly. (Dkt. 97).

6. On July 13, 2018, the Trustee filed the Trustee's Notice and Motion to Modify (Dkt. 108) to pay the Mississippi Department of Revenue's priority claim in the amount of $61.32. The Court granted the Trustee's Notice and Motion to Modify on August 14, 2018. (Dkt. 110).

7. On October 16, 2019, the Trustee filed the Trustee's Motion to Dismiss (Dkt. 112) for non-payment. The Debtors filed the Response to Trustee's Motion to Dismiss (Dkt. 117) and stated the Debtors' intention to file the Motion to Modify to increase the payments under the Plan to cure the deficiency. The Debtors stated that a "substantial and unanticipated change in their financial condition" due to a change in employment had caused the arrearage in the Plan payments over the past months. (Dkt. 118). The Debtors proposed to increase the Plan payments to cure the arrearage. (Dkt. 118). Given Mrs. Sproulls' loss of employment, the Court entered an order vacating the wage order requiring Mrs. Sproulls' former employer to withhold funds from her paycheck. (Dkt. 119). On October 25, 2019, the Court entered another Order Upon Employer Directing Deductions from Pay (Dkt. 120) requiring Mrs. Sproulls' new employer to withhold $520.00 monthly. The Debtors filed the Motion to Modify.

8. On October 28, 2019, the Trustee filed the Trustee's Response to Debtors' Motion to Modify (Dkt. 123). According to the Trustee, the Debtors are delinquent $1,972.50 in Plan payments through October 2019. (Dkt. 123). On November 7, 2019, the Court entered an Order (Dkt. 126) withdrawing the Trustee's Motion to Dismiss (Dkt. 112).

9. At the Hearing, the Trustee questioned whether the proposed modification to the Plan would allow the length of the Plan to continue past sixty (60) months. Pursuant to 11 U.S.C. § 1326(a)(1), the Debtors made their first payment under the unconfirmed Plan in February of 2015. (Dkt. 132 at 4). Using that start date, the Trustee asserted that the sixty (60)-month term would end in February of 2020. (Dkt. 132 at 4). The Trustee, however, asked the Court to exercise its discretion to allow the Plan to continue past February of 2020 so that the Debtor could make the necessary curative payments. The Debtors, in contrast, argued that the sixty (60)-month period started from the date of the first payment under the confirmed Plan, which would allow the Plan to continue until May of 2020.

## Discussion

The provisions for modification of a confirmed plan after confirmation are found in 11 U.S.C. § 1329.[3] "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim[.]" 11 U.S.C. § 1329(a). Subsection (c) provides, "A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the *first payment* under the *original confirmed plan* was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time." 11 U.S.C. § 1329(c) (emphasis added). Section 1325(b)(1)(B) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> \*\*\*

---

[3] Hereinafter, all code sections refer to the Code found at Title 11 of the United States Code, unless otherwise noted.

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

The U.S. Court of Appeals for the Fourth Circuit is the only circuit court to have addressed the issue as to when the sixty (60)-month period begins to run for modification purposes. *See West v. Costen (In re Costen)*, 826 F.2d 1376 (4th Cir. 1987). The *Costen* court reasoned that all of the debtor's payments *prior* to confirmation of the original plan were payments due under the debtor's *unconfirmed* plan, not the debtor's original *confirmed* plan, and the payments were excluded from the court's calculation of the modified plan's duration under § 1329(c). *In re Costen*, 826 F.2d at 1378 n.3. Recent decisions have followed *Costen's* interpretation of § 1329(c). *See In re Morris*, No. 12-03694-8-SWH, 2014 WL 3818947, at *1 (Bankr. E.D.N.C. July 31, 2014) (treating *Costen* as binding precedent and permitting plan modification that extended the period of plan payments from sixty (60) months to seventy-five (75) months); *In re McClam*, No. 08-11544PM, 2009 WL 2928240, at *1 (Bankr. D. Md. Aug. 13, 2009) (citing to *Costen* as the rule and treating the date of confirmation of the original plan as the starting point for calculating the sixty (60)–month duration of a modified plan); *see also United Cal. Savs. Bank v. Martin (In re Martin)*, 156 B.R. 47, 50 (B.A.P. 9th Cir.1993) (citing *Costen*, in dicta, for the proposition that the sixty (60)-month period of a modified plan runs from the date the first payment becomes due after confirmation of the original plan).

Other courts have disagreed with *Costen* and have held that the sixty (60)-month period begins to run for modification purposes from the date on which the debtor was required to commence plan payments under § 1326(a). *See Profit v. Savage (In re Profit)*, 283 B.R. 567, 575

(B.A.P. 9th Cir. 2002) (the sixty (60)-month period under § 1329(c) commences on the date the first plan payment is due pursuant to § 1326(a)(1)); *Baxter v. Evans (In re Evans)*, 183 B.R. 331, 332-33 (Bankr. S.D. Ga. 1995) (disagreeing with the reasoning of *Costen*, and holding that, when calculating the remaining duration of a modified chapter 13 plan under § 1329(c), the final payment must be due no later than sixty (60) months from when the debtor was required to commence plan payments under § 1326(a)(1)); *In re Ramsey*, 507 B.R. 736, 739 n.11 (Bankr. D. Kan. 2014) (citing *In re Evans* and treating the date on which the first payment was due at the commencement of the case as the starting point for calculating the five (5)–year maximum duration of a modified chapter 13 plan under § 1329(c)); *In re Walters*, 223 B.R. 710 (Bankr. W.D. Mo. 1998) (discussing issue in context of addressing whether a modified plan has a retroactive effect); *see also In re Musselman*, 341 B.R. 652 (Bankr. N.D. Ind. 2005) (discussing § 1329(c) in the context of addressing the calculation of plan duration under § 1322(d)); *Christensen v. Black (In re Black)*, 292 B.R. 693, 701 (B.A.P. 10th Cir. 2003) (discussing in dicta the different views on how to calculate the duration of a modified plan). One reputable bankruptcy treatise recognizes that "[t]he reported decisions fix no clear rule for counting the duration of a modified plan . . ." KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY § 256.1, 1-6 (4th ed. Rev. 2017).

The Court begins with the language of the statute, and if its meaning is plain, it "make[s] no further inquiry unless the literal application of the statute will end in a result that conflicts with Congress's intentions." *In re Armstrong World Indus.,* 432 F.3d 507, 512 (3d Cir. 2005) (citations omitted). Statutory provisions must be read in context to avoid an interpretation that is incompatible with the rest of the law. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371 (1988).

The Fourth Circuit in *Costen* and other courts have found that the term "payments" in § 1329(c) means payments by the debtor to the trustee. 8 COLLIER ON BANKRUPTCY ¶ 1329.07 (16th ed. 2019). The statutory language "the time that the first payment under the original confirmed plan was due" suggests that, for modification purposes under § 1329, the start date for calculating when payments on the modified plan must end is counted from the first payment due to be paid to the trustee on the original plan after confirmation of the plan, rather than from the first payment made by the debtor to the trustee before confirmation. *Id.* (citing *In re Costen*, 826 F.2d at 1378; *In re Martin*, 156 B.R. at 50-51; *In re Eves*, 67 B.R. 964 (Bankr. N.D. Ohio 1986)); *see* 7 NORTON BANKR. L. & PRAC. § 150:2 (3d ed. 2020) ("The due date of the first payment is usually the last day of the payment-frequency period provided in the plan after the confirmation order is entered").

The Court is persuaded by *Costen* and other authorities that interpret the start date for purposes of determining the permissible length of a modified plan to begin with the first payment due to be paid to the trustee on the original plan after confirmation of the original plan. Congress could have mirrored the language in § 1326(a) and § 1329(c) if it had intended for the two time periods to start on the same date. Instead, Congress defined the start date for § 1326(a) as "not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier," and for § 1329(c) as the time when "the first payment under the original *confirmed* plan was due." "If Congress includes particular language in one section of a statute but omits it in another . . . — courts presume Congress intended a different meaning." *Crocker v. Navient Solutions, L.L.C. (In re Crocker)*, 941 F.3d 206, 219 (5th Cir. 2019) (internal citations & quotations omitted). The Court must presume that the inclusion of "confirmed plan" in § 1329(c) and its omission in § 1326(a) was intentional and deliberate. The Court recognizes that the preconfirmation payments

must begin "not later than 30 days after the date of the filing of the plan or the order of relief, whichever is earlier" and that this date remains the start date for debtors who do not request post-confirmation plan modification. 11 U.S.C. § 1326(a).

Although the Debtors filed the Petition and their original plan on January 7, 2015 and they were required by § 1326(a) to begin making payments within thirty (30) days, the Plan was not confirmed until May 11, 2015. (Dkt. 56). The due date of the first Plan payment after May 11, 2015 was Friday, May 15, 2015 for the Debtors. (Dkt. 131 at 4). Payments under a modified plan, therefore, may extend until May 15, 2020. (Dkt. 131 at 4). Since the Debtors are proposing to make their final Plan payment by May 15, 2020, they meet the statutory five (5)-year deadline for modification to their Plan.

## Conclusion

Having found that the Debtors' Motion to Modify should be granted to allow Debtors until May 15, 2020 to complete their Plan with the proposed modifications, the Court does not need to address the second issue regarding the Court's discretion to allow additional time to make curative payments after the sixty (60)-month term of the plan. The Debtors shall make the appropriate modifications to the Plan consistent with this Order.

IT IS, THEREFORE, ORDERED that the Motion to Modify is hereby granted.

##END OF ORDER##